Foppiano v. Speed.

JAMES FOPPIANO *v.* R. A. SPEED, Clerk.

*(Jackson.*   April Term, 1904.)

1. **PRIVILEGE TAXES.** Backed assessed or reassessed by clerk of the county court; term "assess" and the manner of assessing defined.

The word "assess," as used in statutes in connection with privilege taxes, means simply the listing of the names of the persons exercising privileges taxed, with the designation of the privilege exercised, with or without an extension of the amount fixed by statute for the exercise of such particular privilege; and in this sense, the clerk of the county court may "back assess or reassess" privilege taxes that have escaped listing and collection. (*Post, pp.* 170-172.)

Acts cited and construed:   1903, ch. 258, secs. 30, 31, and 46; 1901, ch. 174, sec. 31; 1899, ch. 435, sec. 32.

2. **SAME.** Same. But back assessment or reassessment is not prerequisite to collection by distress warrant or otherwise.

But such back assessment or reassessment of privilege taxes is not prerequisite to the collection thereof or the issuance of a distress warrant therefor, since the statute fixes the amount, and makes it the duty of all persons exercising privileges to come forward and obtain a license from the clerk of the county court, and pay therefor the amount fixed by law. (*Post, p.* 172.)

Acts cited and construed:   1903, ch. 258, sec. 28; 1903, ch. 257, sec. 14; 1901, ch. 128, sec. 18; 1901, ch. 174, secs. 28 and 48; 1899, ch. 435, secs. 29 and 31; 1899, ch. 432, sec. 15.

Foppiano v. Speed.

3. **SAME.** For three years back may be collected by distress war-
rant or otherwise by clerk of the county court.

It is the duty of the clerk of the county court to enforce col-
lection of privilege taxes by distress warrant or otherwise
against persons exercising taxed privileges without paying the
amount as fixed and required by statute; but not for more than
three years back. (*Post, pp*, 172, 173.)

Acts cited and construed: 1903, ch. 258, sec. 28; 1903, ch. 257,
sec. 14; 1901, ch. 128, sec. 18; 1901, ch. 174, secs. 28 and 48;
1899, ch. 435, secs. 29 and 31; 1899, ch. 432, sec. 15.

4. **SAME.** Sale of intoxicating liquors on a steamboat east of the
center of the Mississippi river within the jurisdictional limits
of Tennessee subjects seller to privilege tax.

The center of the Mississippi river is the line between the States
of Tennessee and Arkansas, and for exercising the privilege
of selling intoxicating liquors on a steamboat, while within
the jurisdictional limits of Tennessee as thus defined, a lia-
bility is incurred for the privilege tax fixed by statute. (*Post,
p*. 173.)

Acts cited and construed: 1903, ch. 257, p. 615; 1901, ch. 128,
p. 214; 1899, ch. 432, p. 1032.

Cases cited and approved: Moss v. Gibbs, 10 Heis., 283; Stock-
ley v. Cissna, 119 Fed., 821, 56 C. C. A., 324; Missouri v. Ken-
tucky, 11 Wall., 395.

5. **SAME.** Same. Retail of intoxicating liquors on a steamboat
engaged in interstate commerce is not itself interstate com-
merce, and subjects seller to privilege tax.

The retail of intoxicating liquors on a steamboat engaged in in-
terstate commerce, while within the jurisdictional limits of
Tennessee, is not itself interstate commerce, and subjects the
seller to the privilege tax fixed by statute for such sales. (*Post,
p*. 173.)

Acts cited and construed: 1903, ch. 257, p. 615; 1901, ch. 128,
p. 214; 1899, ch. 432, p. 1032.

Case cited and approved: Harrell v. Speed, 5 Cates, 224.

Foppiano v. Speed.

FROM SHELBY.

Appeal from the Circuit Court of Shelby County.—J. P. Young, Judge.

Randolph & Randolph, for plaintiff.

Attorney-General Cates and C. D. M. Greer, for defendant.

Mr. Justice Neil delivered the opinion of the Court.

The facts upon which the questions to be determined in this case rest fully appear in the agreed statement appearing in the record, and need not be more particularly referred to than as stated below.

For the purpose of deciding the question involved, it need only be stated that the steamer C. H. Organ is owned by the West Memphis Packet Company, a corporation chartered under the laws of the State of Arkansas, and engaged in plying between two or more points in that State and the city of Memphis, Tennessee; that Foppiano is the lessee of the bar privileges, and as such lessee retailed liquors and beer thereon during the years 1901, 1902, and 1903, and is still so engaged. Liquors are sold from the bar at all times when cus-

tomers desire to be served, including such times as the
boat may be at its landing in Memphis, Tennessee. The
boat referred to makes regular landings at its wharf in
the city of Memphis, there receiving and discharging
freight and passengers. At such times Foppiano, dur-
ing the years aforesaid, has been accustomed to make
sales of liquors and beer to such persons as desired to
make purchases thereof.

The county court clerk of Shelby county, deeming
Foppiano liable for the taxes imposed by the State of
Tennessee upon persons selling beer and liquors upon
steamboats, notified him through the revenue agent of
the State. After a hearing the clerk held that Foppiano
was liable for the tax, and from this holding
an appeal was taken to the State board of equalization,
which board affirmed the holding of the county court
clerk. Thereupon plaintiff in error paid, under pro-
test, the amount of the tax, with penalties and costs,
and instituted this suit to recover therefor.

The statutes, under which the tax was imposed, con-
tain the following provisions:

"Liquor Dealers. . . . Persons selling beer, or
any quantities of liquor on steamboats, or any other
vessel, or watercraft, or from railroad cars, shall pay a
tax, each, in lieu of all other taxes, to be paid in any
county they may elect, per annum, two hundred dol-
lars." Acts 1903, p. 615, c. 257; Acts 1901, p. 214, c.
128; Acts 1899, p. 1032, c. 432.

1. It is insisted that the county court clerk had no

Foppiano v. Speed.

authority to back assess the taxes for the years 1901, 1902, 1903, upon plaintiff in error, Foppiano.

Section 30, chapter 258, page 660, Acts 1903, provides that the clerk of the county court shall collect all privilege taxes.   Section 31 provides:  "That any property or properties included in this act shall be back, or reassessed for the period now provided by law, viz.:  (1) When the same have been omitted from or escaped taxation. . . . (5)   When the owner, or his agent, fails, refuses, or neglects to list the property to the assessor, as required by law."

Section 46 provides:    "That it shall be the duty of the assessor to make a return to the county court clerk of the name of each person, company, firm, or corporation, engaged in any business liable in any way to pay a privilege tax in each district or ward under the provisions of the law.   It shall be the duty of the judge or chairman of the county court, and of the county court clerk to examine the lists so returned, and compare the same with the list of persons paying privileges; and he shall report the result to the quarterly court at the July term following the assessment, and the said report shall be read in the full meeting of the county court."   See, also, Acts 1901, p. 334, c. 174, sec. 31; Acts 1899, p. 1112, c. 435, sec. 32.

Ordinarily, of course, the terms "assess" and "assessment" apply only to ad valorem taxation, when used in respect of tax laws; but it is seen that under section 46 the duty is devolved upon the assessor to report to

the clerk of the county court the names of persons ex-
ercising privileges, to the end that such persons may
be listed, and the amount of the privilege tax collected
from them.    Under section 48 it is made the duty of
the clerk of the county court to collect all privilege
taxes.

Construing together the several provisions referred
to, we think it clear that the word "assess," when used
in connection with privilege taxes, means simply · the
listing of the names of the persons exercising privileges,
with the designation of the privilege.    It may or may
not include an extension of the amount fixed by the stat-
ute for the exercise of such privilege.    In this sense, we
think the clerk of the county court may "back assess or
reassess" privilege taxes that have escaped listing and
collection.

But we do not think that it is at all necessary that
there should be such back assessment or reassessment
of privilege taxes, since the statute fixes the amount,
and makes it the duty of all persons exercising privi-
leges to come forward and obtain a license from the
clerk, and pay therefor the amount fixed by law.    Acts
1903, p. 657, c. 258, sec. 28; Id., p. 643, c. 257, sec. 14;
Acts 1901, p. 228, c. 128, sec. 18; Id., p. 331, c. 174, sec.
28; Id., p. 352, c. 174, sec. 48; Acts 1899, pp. 1109, 1112,
c. 435, secs. 29, 31; Id., p. 1051, c. 432, sec. 15.    Under
these statutes it is not only the duty of the person ex-
ercising the privilege to promptly pay the tax, but it is
also the duty of the clerk of the county court to call

Foppiano v. Speed.

upon such person for the tax if he fail to pay. It is no less his duty, if such person has been exercising the privilege for three years theretofore without payment, to take steps, by distress warrant or otherwise, to compel such payment. The limitation of three years is fixed in analogy to the limitation fixed upon other back taxes.

2. The center of the Mississippi river is the line between Tennessee and Arkansas (*Moss* v. *Gibbs,* 10 Heisk., 283; *Stockley* v. *Cissna,* 119 Fed., 821, 56 C. C. A., 324; *Missouri* v. *Kentucky,* 11 Wall., 395, 20 L. Ed., 116), and we are of the opinion that for exercising the privilege referred to within the limit just stated plaintiff became liable for the tax.

3. We do not think that the retailing of liquors under the circumstances stated (even though conducted on a steamboat engaged in interstate commerce) was, itself, interstate commerce. The question is discussed, and the reasons for this view are given, in an opinion delivered by the chief justice at the present term in the case of *Leslie L. Harrell* v. *R. A. Speed, Clerk,* 5 Cates, 224 (81 S. W., 840), to which we refer without further elaboration.

Affirm the judgment of the court below, with costs.